UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:21 cv 20746

**CONCIERGE SERVICES, INC.,** an Alabama
Corporation d/b/a CSI Transportation,

     Plaintiff,                                    **JURY TRIAL DEMANDED**

     vs.

**FLAGLER HOLDINGS VI BETA INC. f/k/a
HOTEL CONNECTIONS, INC.,**
a Florida Corporation and subsidiary of
FleetCor Technologies, Inc.,
a Louisiana Corporation,

     Defendant.

_____ /

## <u>COMPLAINT</u>

     COMES NOW Plaintiff, CONCIERGE SERVICES, INC. d/b/a CSI Transportation (hereinafter "CSI"), by and through undersigned counsel, sues the Defendant, FLAGLER HOLDINGS VI BETA INC. f/k/a HOTEL CONNECTIONS, INC. (hereinafter "HCI"), and alleges that CSI is entitled to relief and states as follows:

### PRELIMINARY ALLEGATIONS

     1.    This is an action for breach of contract, breach of implied covenant of good faith and fair dealing, tortious interference with contract and/or existing or prospective advantageous business relationship, promissory estoppel, negligent misrepresentation, and deceptive trade practices, and for damages in an amount in excess of Seventy Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interests.

     2.    At all times relevant and material to this Complaint, Plaintiff, CSI, was an

Alabama corporation conducting business in Montgomery County, Alabama.

3.      At all times relevant to this Complaint, Defendant, HCI, was a Florida Corporation and subsidiary of FleetCor Technologies, Inc., a Louisiana corporation, conducting business in Miami-Dade County, Florida, with its principal place of business located at 95 Merrick Way, 3rd Floor Coral Gables, Florida 33134.

4.      On or around October 28, 2020, HCI formally amended its company name to "Flagler Holdings VI Beta, Inc." according to the Florida Department of State, Division of Corporations, Document #P13000101422.

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 (a)(1) because the matter in controversy exceeds the sum of $75,000 and is between an Alabama plaintiff and a Florida defendant, which is a subsidiary of a Louisiana corporation.

6.      Venue is proper in the Southern District of Florida, pursuant to the venue clause in the parties' Transportation Fee Agreement entered into on June 4, 2020.

7.      All conditions precedent to filing this action have occurred or have been  waived.

8.      CSI has retained the law firm of Maglio Christopher & Toale, P.A. to represent it in this action and is obligated to pay a reasonable fee for legal  services.

## FACTUAL ALLEGATIONS

### A.  The Parties

9.      CSI is a transportation services company whose business includes providing transport services to airlines from airports to various nearby hotels.

10.      HCI, a subsidiary of FleetCor Technologies, Inc., is a company providing transportation logistics and services for companies whose business involves airline crew logistics. HCI's business includes searching for transportation accommodations for airlines, crew, staff, and

union delegates, and assisting the airline with or negotiating on behalf of the airline for the provision of transportation for crew.

11.     Non-party PSA Airlines ("PSA") is a regional airline headquartered at Dayton International Airport in Vandalia, Ohio, that flies under the American Eagle brand for American Airlines and is a wholly owned subsidiary of American Airlines Group.  PSA flies to and from the Montgomery Regional Airport ("MGM"), a civil-military airport seven miles from Montgomery, Alabama.

### B.  The Transportation Fee Agreement

12.     From on or around June, 2018, to June, 2020, HCI and CSI entered into agreements for transportation services pursuant to which CSI would pick up PSA crewmembers from MGM and transport them to nearby hotels for overnight stays, then pick up crewmembers from the hotels and transport the crewmembers back to MGM.

13.     Upon information and belief, during the period from June, 2018, to June, 2020, HCI was compensated for its coordination of transportation services for PSA through commissions paid by various hotels, but CSI was not required to pay any commissions to HCI for the transportation accommodations it provided to PSA.

14.     In or around, April of 2020, Kristofer Watson, an account manager with HCI, contacted CSI to ask that it enter into a contract with HCI for transportation services for the next contract year.

15.     During discussions with CSI, Mr. Watson asked CSI to propose a rate per transport at which CSI would agree to provide transportation services.

16.     At the time of those discussions, Mr. Watson did not mention that HCI intended to begin charging CSI a commission based on a percentage of each transport charged by CSI.

17.     Because CSI was unaware that HCI intended to begin charging it a commission, it proposed to Mr. Watson that it would charge the same rate that it had charged under the previous HCI contract during the previous year.

18.     When CSI received HCI's proposed contract on or around June 2, 2020, however, it included a provision whereby HCI expected that CSI would now pay a portion of its rate per transport in a commission percentage.

19.     CSI discussed with Mr. Watson the possibility of raising CSI's proposed rate with HCI in order to offset the commission percentage, but ultimately agreed that in order to secure the HCI contract and continue to provide PSA with transport services, it would honor its originally proposed rate.

20.     On June 4, 2020, HCI and CSI entered into a Transportation Fee Agreement (the "Agreement") for a term beginning on June 2, 2020, and ending on June 2, 2021.  A true and accurate copy of the Agreement, redacted for confidentiality purposes, is attached herewith and incorporated herein as **Exhibit "A."**

21.     The Agreement describes its "purpose" as follows:

> PSA Airlines (the "airline") operating out of MGM Airport hereinafter referred to as "airline" has authorized HCI to search for transportation accommodations provided by [CSI] to the airline, its crew, staff, and union delegates. HCI will assist the airline with and/or negotiate on behalf of the airline for the provision of transportation for crew.

22.     Under a paragraph entitled, "Exclusive Representation," HCI and CSI agreed that HCI would introduce CSI to PSA for "the purpose of the airline's utilizing the services at a discounted rate" and that HCI's commission for such representation and introduction was specified elsewhere in the Agreement.

23.      Under the terms of the Agreement, HCI and CSI agreed that CSI would work

exclusively with HCI with regard to PSA, and that CSI would not solicit or accept business from PSA that was not covered by the Agreement.

24.    HCI and CSI agreed that CSI "shall" provide "all" of the transportation trips for PSA.

25.    HCI and CSI agreed that the approximate expected number of trips required by PSA on a daily basis was approximately 1 to 11 trips.

26.    HCI and CSI further agreed that CSI would provide PSA with transportation accommodations for a specific rate inclusive of all charges and applicable taxes, which rate was the same as it was the previous year despite the additional commission fees.  HCI and CSI also agreed that the specific rate as outlined in the Agreement was to remain strictly confidential and "shall not be disclosed in any manner to the general public, guests, other transportation companies, travel agents, travel management companies or any vendor of internet transportation rates during or following this contract."

27.    HCI and CSI further agreed that "[a]ll information pertaining to either party obtained pursuant to the negotiation and/or administration of th[e] Agreement and all documents, communication, collateral material or any other like material shall be treated as confidential and shall not be released or disclosed to any other person or Third-Party of any kind except to [PSA]."

28.    HCI and CSI further agreed that CSI would pay HCI a specific percentage of its revenues from "all trips utilized by [PSA], whether finalized, or reserved," and that such commissions paid to HCI were for services rendered, including, but not limited to the following:

> [L]ocating transportation accommodation, introducing [CSI] and [PSA] to each other, negotiating rates, negotiating services and transportation, arranging final contracts, advising on bid proposals prepared on behalf of the transportation company for consideration by the airline, meeting and communicating with both [PSA] and [CSI] staff for the purpose of submitting and bringing the contract to a close on behalf of both parties, assisting in resolving contract

details, initiating an understanding of both parties' needs and limitations for the crew accommodations and provision of related services, finalizing terms, services, schedules, transportation accommodation and rates for the contract, billing and reconciliation. monitoring services, acting on behalf of [PSA] and [CSI] to resolve any contract or service problem during the term of the contract, and initiating renewal contract negotiations.

29.     HCI and CSI agreed that HCI would review PSA's requirements with CSI prior to the expiration of CSI's contract with PSA and would negotiate with CSI and PSA for "continued use of transportation services as much in advance of the expiration date as practicable." HCI and CSI agreed that CSI would not bypass or circumvent HCI in CSI's dealings with PSA, that CSI would not enter into an agreement with PSA for travel services directly or indirectly during the term of the Agreement, and that CSI would not approach or contact PSA to solicit its business in any way that would effectively exclude HCI from its commission during the term of the Agreement.

30.     HCI and CSI agreed to review their **ongoing relationship** at the end of the term of the Agreement in **good faith** and **negotiate reasonably for a renewal** of the Agreement. (emphasis added).

31.     HCI and CSI agreed that CSI would indemnify and hold harmless HCI, its agents, officers, directors, employees and owners against any liabilities, costs, damages, fines judgments, settlements, and expenses of any kind (including without limitation reasonable attorneys' fees both defending any third-party claim and enforcing this indemnity) arising out of or related to:

(i)      any guest's ride with [CSI];
(ii)     any other party's claim related to or in connection with a guest's ride with [CSI]; and/or
(iii)    any claim by [PSA] for any breach by [CSI] of any provision of this Agreement or the contract between [CSI] and [PSA], including specifically, but not limited to, any and all costs associated with the trip relocation of a guest resulting from such breach.

### C.  **HCI's Breach of the Agreement**

32.     Following the execution of the Agreement, and as had been the case in previous years, CSI expected to receive scheduling information from HCI for crewmember transportation; yet despite numerous attempts to communicate with HCI regarding the schedules, HCI failed to provide CSI with scheduling information.

33.     On or around July 13, 2020, Mr. Watson confirmed in an email sent at 8:47 a.m. that CSI's contract was to begin on June 2, 2020.

34.     On or around July 13, 2020, CSI responded to Mr. Watson's email correspondence at 9:23 a.m., stating, "[w]e haven't had any crews to transfer.  We've been waiting, and still nothing.  No notification from anyone."

35.     Upon information and belief, during the period in which CSI was trying to acquire scheduling information from HCI, HCI was deceptively soliciting other entities or persons to introduce and represent to PSA for PSA's transportation accommodation requirements.

36.     Despite not having any scheduling information, CSI began to receive emails from PSA crewmembers asking CSI to provide them with transportation accommodations.

37.     In order to preserve its business reputation and uphold the Agreement, and in response to requests from PSA crewmembers, on or about July 19, 2020, CSI received a call from a Flight AA5279 crewmember named Dan who requested that CSI pick up PSA crewmembers at the MGM airport and transport them to the nearby Renaissance Hotel.  CSI explained that it had not yet received the pickup schedule, but agreed to transport the PSA crewmembers at MGM to the Renaissance Hotel.

38.     The following morning, on or about July 20, 2020, CSI returned to the Renaissance Hotel and transported PSA crewmembers back to MGM.

39.     Neither HCI, nor PSA, paid CSI for the transportation of PSA's crewmembers.

40.     On or about July 20, 2020, CSI was informed by the front desk manager at the Renaissance Hotel (the "Hotel Manager") that HCI had inquired previously if the hotel could provide transportation services to the PSA crewmembers coming into MGM.

41.     The Hotel Manager informed CSI that she had previously explained to  HCI that the Renaissance Hotel was unable to provide transportation services to PSA crewmembers.

42.     The Hotel Manager then explained to CSI that after the Covid-9 pandemic began in March, 2020, HCI again asked if the Renaissance Hotel could provide transportation services to PSA crewmembers, and the Hotel Manager again declined to do so.

43.     Nevertheless, upon information and belief, HCI contacted the Renaissance Hotel valet service ("Third-Party Transportation Company") in or around June, 2020, and solicited a contract for transportation accommodations with the Third-Party Transportation Company.

44.     Throughout June and July of 2020, CSI continued receiving requests from PSA crewmembers for transportation accommodations and continued to request a schedule from HCI.

45.     On or about July 21, 2020, Mr. Watson told CSI that HCI had, in fact, negotiated on behalf of a Third-Party Transportation Company for PSA's transportation needs and only entered into the Agreement with CSI for "back-up" in case there was ever a time the Third-Party Transportation Company could not provide the services.

46.     Upon information and belief, HCI used, on behalf of Third-Party Transportation Company, and/or disclosed to Third-Party Transportation Company, confidential information included in CSI's Agreement in violation of the confidentiality provision of the Agreement.

47.     By negotiating on behalf of Third-Party Transportation Company whose interests are adverse to CSI during the Agreement's term, HCI breached the Agreement and tortiously interfered with CSI's advantageous business relationship with PSA.

48.     HCI further breached the Agreement by revealing, utilizing, or disclosing confidential information included in the Agreement.

49.     HCI further breached the Agreement when it failed to pay CSI for its actual and expected transportation accommodations.

50.     HCI's breaches of the Agreement and tortious interference with CSI's advantageous business relationship with PSA are material breaches of the Agreement.

51.     As a result of HCI's material breaches of the Agreement, CSI has incurred losses and expenses, including but without limitation, lost profits, business reputation harm, costs, expenses, and attorney's fees.

52.     HCI's material breaches of the Agreement have caused ongoing damage to CSI.

53.     CSI has retained the undersigned attorneys to represent it in this action, and it is obligated to pay these attorneys a reasonable fee for their services rendered and for costs and expenses incurred.

54.     All conditions precedent to maintaining this action have occurred, been excused, or otherwise waived.

## COUNT I
## BREACH OF CONTRACT

55.     CSI realleges the allegations contained in paragraphs 1 through 54 above and incorporates them herein by reference.

56.     HCI and CSI entered into a valid contract pursuant to which HCI agreed to introduce and represent CSI in negotiations with PSA for transportation accommodations.

57.     Pursuant to the Agreement, CSI agreed to work exclusively with HCI with regard to PSA, to pay HCI commissions on all PSA transportation accommodations, to charge HCI its transport rate from the previous year despite the introduction of commissions, to forbear from negotiating directly with PSA, to forbear from soliciting or accepting business from PSA that is not covered by the Agreement, to forbear from entering directly or indirectly into any agreement with PSA that would result in circumvention of HCI's commission payment, to keep certain information in the Agreement confidential, and to indemnify and hold harmless HCI, its agents, officers, directors, employees, and owners against any liabilities, costs, damages, fines judgments, settlements, and expenses of any kind related to any guest's ride, any other party's claim related to or in connection with a guest's ride, and/or any claim by PSA for any breach by CSI of any provision of the Agreement or a contract between CSI and PSA, including specifically, but not limited to, any and all costs associated with the trip relocation of a guest resulting from such breach.

58.     Upon information and belief, HCI introduced CSI to PSA and negotiated the transportation rates and other terms on behalf of CSI pursuant to the Agreement.

59.     CSI performed transportation accommodations for PSA as required under the Agreement and was and is still ready to perform its responsibilities and obligations.

60.     Upon information and belief, HCI materially breached the Agreement by representing, introducing, and negotiating a substantially similar agreement for transportation accommodations with PSA for Third-Party Transportation Company whose interests are adverse to CSI.

61.     Upon information and belief, HCI further materially breached the Agreement by disclosing confidential information included in the Agreement to Third-Party

Transportation Company.

62.    All conditions precedent for bringing forth this action have been performed, have occurred, or otherwise been waived.

63.    As a direct and proximate result of the foregoing, CSI has been damaged and is entitled to any and all damages flowing from HCI's breaches of the Contract.

**WHEREFORE**, PLAINTIFF, CONCIERGE SERVICES, INC., respectfully requests that this Court enter a judgment against DEFENDANT, FLAGLER HOLDINGS VI BETA INC. f/k/a HOTEL CONNECTIONS, INC., for damages, along with attorneys' fees, interest, costs, expenses, and such other and further relief as this Court deems just and proper.

**COUNT II**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

64.    CSI realleges the allegations contained in paragraphs 1 through 54 above and incorporates them herein by reference.

65.    CSI reasonably expected that HCI would work in good faith on behalf of CSI to represent CSI and negotiate the transportation accommodations business relationship between CSI and PSA for the duration of the Agreement and pursuant to the terms in the Agreement.

66.    CSI reasonably expected by agreeing to HCI's exclusivity and non-circumvention provisions, by maintaining its previous rate for transportation accommodations despite the addition of commissions, and by agreeing to other forbearance and indemnification provisions in the Agreement, that HCI would not do anything to unfairly interfere with CSI's rights and benefits of the Agreement.

67.    Instead, HCI knowingly solicited, represented, introduced, and negotiated on behalf of Third-Party Transportation Company to provide transportation accommodations to

PSA.

68.     Because Third-Party Transportation Company's interests were adverse to CSI, HCI's representation of Third-Party Transportation Company caused HCI to fail  in its duty to make decisions for the benefit of CSI as required by the Agreement and harmed CSI.

69.     CSI performed its transportation accommodations as required under the Agreement and was and is still ready to perform its responsibilities and obligations pursuant to the Agreement.

70.     Upon information and belief, HCI materially breached the implied covenant of good faith and fair dealing by soliciting, representing, introducing, and negotiating a substantially similar agreement for PSA's transportation accommodations between a Third-Party Transportation Company and PSA, which unfairly interfered with CSI's receipt of the Agreement's benefits.

71.     All conditions precedent for bringing forth this action have been performed, have occurred or otherwise been waived.

72.     As a direct and proximate result of the foregoing, CSI has been damaged and is entitled to any and all damages flowing from HCI's breach of the implied covenant of good faith and fair dealing.

      **WHEREFORE**, PLAINTIFF, CONCEIRGE SERVICES, INC., respectfully requests that this Court enter a judgment against DEFENDANT, FLAGLER HOLDINGS VI BETA INC. f/k/a HOTEL CONNECTIONS, INC., for damages, along with attorneys' fees, interest, costs, expenses, and such other and further relief as this Court deems just and proper.

**COUNT III**
**TORTIOUS INTERFERENCE WITH CONTRACT AND/OR**
**ADVANTAGEOUS BUSINESS RELATIONSHIP**

73.     CSI realleges the allegations contained in paragraphs 1 through 54 above and incorporates them herein by reference.

74.     CSI had a contractual relationship with PSA and/or an existing or potential advantageous business relationship.

75.     HCI knew of CSI's contractual and/or existing or potential advantageous business relationship with PSA because HCI negotiated the terms of that contract and/or existing or potential advantageous business relationship and insisted that HCI and HCI alone interact with PSA on CSI's behalf.

76.     HCI intentionally and without justification interfered with, interrupted, and/or disrupted CSI's contractual and/or existing or potential advantageous business relationship with PSA by soliciting and then negotiating on behalf of Third-Party Transportation Company to provide transportation accommodations to PSA.

77.     As a direct and proximate result of the foregoing, CSI has been damaged by HCI's interference with CSI's contractual and/or existing or potential business relationship with PSA, and CSI is entitled to any and all direct, compensatory and equitable damage.

**WHEREFORE**, PLAINTIFF, CONCEIRGE SERVICES, INC., respectfully requests that this Court enter a judgment against DEFENDANT, FLAGLER HOLDINGS VI BETA INC. f/k/a HOTEL CONNECTIONS, INC., for damages, along with attorneys' fees, interest, costs, expenses, and such other and further relief as this Court deems just and proper.

## COUNT IV
## <u>PROMISSORY ESTOPPEL</u>

78.     CSI realleges the allegations contained in paragraphs 1 through 19 above and incorporates them herein by reference.

79.     CSI alleges in the alternative to its Breach of Contract claim, that CSI is entitled to recover under the doctrine of promissory estoppel if it is determined that either a valid and enforceable contract does not exist, the existing contract does not cover the subject matter of the dispute between CSI and HCI, or the existing contract is void, invalid, or unenforceable.

80.     HCI made a promise to CSI to represent its interests and negotiate on its behalf with PSA to secure all of PSA's transportation trips exclusively for CSI, and to negotiate a renewal agreement, in exchange for:

      a.   CSI to work exclusively with HCI regarding PSA;

      b.   CSI would not solicit or accept business from PSA that was not negotiated by HCI;

      c.   CSI to provide transportation accommodations to PSA for a specific rate;

      d.   CSI to forebear communicating to third parties the negotiated rates and commissions; and,

      e.   CSI to pay a commission to HCI for services to PSA.

81.     HCI should have reasonably expected that its promise would induce forbearance or action on the part of CSI.

82.     HCI's promise did induce CSI to forbear from engaging directly or indirectly with PSA to secure the transportation services contract with PSA.

83.     HCI's promise also caused CSI to retain its fleet of cars and employees in the midst of the Covid-19 pandemic constraints on the economy, and to indemnify and hold

harmless HCI.

84.     As a result of its reasonable reliance on the promises and assurances made by HCI to CSI, CSI has been significantly prejudiced and has suffered significant damages, including, without limitation, the loss of its relationship with PSA, its ability to earn profits during the term of the Agreement based on the relationship with PSA, out-of-pocket expenses, including but not limited to, car payments and maintenance, labor costs, and attorneys' fees, and out-of-pocket expenses in attempting to locate alternate business relationships to replace the lost earnings from the PSA relationship.

85.     In order to avoid the injustice that would result if HCI's promise to CSI is not enforced, HCI must be required to pay CSI for its damages flowing from its reasonable reliance upon HCI's promises.

**WHEREFORE**, PLAINTIFF, CONCEIRGE SERVICES, INC., respectfully requests that this Court enter a judgment against DEFENDANT, FLAGLER HOLDINGS VI BETA INC. f/k/a HOTEL CONNECTIONS, INC., for damages, along with attorneys' fees, interest, costs, expenses, and such other and further relief as this Court deems just and proper.

## COUNT V
## NEGLIGENT MISREPRESENTATION

86.     CSI realleges the allegations contained in paragraphs 1 through 54 above and incorporates them herein by reference.

87.     HCI misrepresented the material fact that it would represent CSI's interests to PSA, and negotiate with PSA on CSI's behalf when, in fact, it solicited and then represented a Third Party Transportation Company's interests that were adverse to CSI and negotiated with PSA on behalf of that Third Party Transportation Company whose interests were adverse to CSI.

88.     HCI further misrepresented the material fact that it intended to use CSI as the primary transportation accommodations company for PSA, when in fact, it intended to only use CSI for "back-up" transportation accommodations.

89.     HCI knew or should have known that its misrepresentations to CSI were false.

90.     HCI intended to induce CSI to rely on its misrepresentations so that HCI would be able to use CSI as "back-up."

91.     CSI acted in justifiable reliance upon HCI's misrepresentations, resulting in CSI being damaged.

**WHEREFORE**, PLAINTIFF, CONCEIRGE SERVICES, INC., respectfully requests that this Court enter a judgment against DEFENDANT, FLAGLER HOLDINGS VI BETA INC. f/k/a HOTEL CONNECTIONS, INC., for damages, along with attorneys' fees, interest, costs, expenses, and such other and further relief as this Court deems just and proper.

**COUNT VI**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE**
**PRACTICES ACT, CHAPTER 501,**
**PART II, FLORIDA STATUTES ("FDUTPA")**

92.     CSI realleges the allegations contained in paragraphs 1 through 54 above and incorporates them herein by reference.

93.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The provisions of FDUTPA shall be "construed liberally to promote the protection" of the "consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

94.     HCI was, at all times material to the allegations herein, engaged in "trade or commerce" as defined by FDUTPA. Fla. Stat. §501.203 (8).

95.     CSI is, and was at any relevant time, a consumer within the meaning of FDUTPA. Fla. Stat. §501.203 (7).

96.     HCI engaged in deceptive acts and practices through deceptive and unfair conduct in violation of FDUTPA.

97.     HCI failed to disclose material facts in negotiating the Agreement with CSI by concealing, suppressing, and omitting material information regarding HCI's intention to solicit and represent other persons or entities to provide transportation accommodations to PSA, and to use CSI only for "back up."

98.     HCI, for its own financial benefit and gain, entered into the Agreement with CSI to represent CSI's interests in providing PSA with transportation accommodations despite intending to represent and then representing a third party, whose interests were adverse to CSI's interests.

99.     HCI unconscionably demanded CSI forbear from negotiating with PSA directly for transportation accommodations as a requirement for entering into the Agreement, while secretly soliciting and representing a third party to PSA for transportation accommodations, thus having effectively removed CSI from competing in the marketplace for PSA's transportation accommodations.

100.    HCI implemented a plan for its own financial benefit to solicit and then represent the interests of a third party instead of CSI's interests, knowingly misleading CSI to believe HCI would represent CSI's interests, and effectively removing CSI from the ability to compete in the marketplace for PSA's transportation accommodations.

101.    As a direct and proximate cause of HCI's deceptive trade practices, CSI has incurred and will continue to incur significant damages due to reputational harm, lost revenue, and other expenses.

102.    HCI's actions were likely to have deceived a business such as CSI acting reasonably in the same circumstances.

103.    HCI's actions caused harm to consumers who were misled to believe that CSI, a trusted vendor, was not ready, willing, and able to provide them with transportation accommodations, and that a third-party provider of transportation accommodations was better able to serve them.

**WHEREFORE**, PLAINTIFF, CONCEIRGE SERVICES, INC., respectfully requests that this Court enter a declaratory judgment against DEFENDANT, FLAGLER HOLDINGS VI BETA INC. f/k/a HOTEL CONNECTIONS, INC., that HCI's act or practice violates the Florida Deceptive and Unfair Trade Practices Act, and that the Court enjoin HCI from perpetuating the unlawful act or practice; and to award damages, along with attorneys' fees, interest, costs, expenses, and such other and further relief as provided in Fla. Stat. §501.2075, Fla. Stat.§501.2105, and as this Court deems just and proper.

## JURY DEMAND

PLAINTIFF, CONCIERGE SERVICES, INC., demands a jury trial of all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated this 23rd day of February 2021.

**MAGLIO CHRISTOPHER & TOALE, P.A**.

**Christina E. Unkel, Esq.**
Florida Bar No.: 099203
**Pamela G. Levinson, Esq.**
Florida Bar No. 538345
1605 Main Street, Suite 710
Sarasota, Florida 34236
Phone: 941-952-5242
Fax: 941-952-5042
Primary: cunkel@mctlaw.com
Primary: plevinson@mctlaw.com
Secondary: ddrabina@mctlaw.com
Secondary: ebanfelder@mctlaw.com
*Attorneys for Plaintiffs*